# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHALMERS A. SIMPSON, JR., | |
| Plaintiff, | CIVIL ACTION NO. 1:17-cv-02343 |
| v. | (SAPORITO, M.J.) |
| PA. BOARD PROBATION / PAROLE, et al., | |
| Defendants. | |

## **MEMORANDUM**

On May 20, 2019, the plaintiff, Chalmers A. Simpson, Jr., filed a *pro se* motion to compel discovery, pursuant to Rule 37(a) of the Federal Rules of Civil Procedure. (Doc. 37.) He seeks an order compelling the defendants to produce any audio recordings or transcripts of several hearings—some of them abbreviated due to continuances—held in the course of state parole revocation proceedings against him in December 2015 and January 2016.

On or about January 31, 2019, Simpson served the defendants with written interrogatories and requests for production, pursuant to Rules 31 and 34 of the Federal Rules of Civil Procedure. In Simpson's Document Request No. 12, he requested: "Copies of all records, testimony,

transcripts, letters, documents, recordings of any and all hearings . . . which includes[] panel, violation, detention, preliminary, and probable cause hearings which was held *(sic)* . . . ." (Doc. 37, at 11–12.) In response to this document request, the defendants have produced to Simpson a stenographic transcript of a preliminary detention hearing held before a parole hearing examiner on January 29, 2016. (Doc. 45–1.) The defendants have advised Simpson that no other transcripts or recordings exist, and they have submitted into the record an unsworn declaration by Morgan Davis, an attorney with the state parole board, attesting to the same. (Doc. 45-2.) From the parties' submissions, it does not appear that the defendants have produced a copy of the audio recording itself.

Simpson now moves to compel the defendants to produce audio recordings and any transcripts of hearings conducted on: December 24, 2015; January 8, 2016; and January 25, 2016. He also seeks production of the audio recording from which a stenographer derived the transcript of the January 29, 2016, hearing already produced by the defendants.

Under the federal rules,

> [u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the

> needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Simpson claims that he was deprived of his Fourteenth Amendment right to due process because the defendants failed to hold a preliminary hearing on his parole violation charges within fourteen days after his arrest and incarceration, and because he was denied his due process right to be represented by counsel in these same proceedings. The proper scope of discovery with respect to these claims is further cabined by the factual context upon which these claims rest.[1]

On December 12, 2015, Simpson was arrested in Swatara Township, Pennsylvania, and charged with felony retail theft.[2] Because

---

[1] In ascertaining the factual underpinnings of Simpson's claims to determine the proper scope of discovery, we have relied on his complaint, on the materials submitted by both parties in connection with the instant motion to compel, and on public records of state judicial proceedings of which we may properly take judicial notice.

[2] *See generally Commonwealth v. Simpson*, Docket No. MJ-12201-CR-0001456-2015 (Dauphin Cty. (Pa.) Magis. Dist. Ct.); *Commonwealth*
*(continued on next page)*

he was on parole release for a prior felony conviction,[3] after his preliminary arraignment before a state magisterial district judge that same day,[4] Simpson was transferred to the custody of the Pennsylvania Department of Corrections pursuant to a parole violator warrant.

On December 22, 2015, while incarcerated at a state correctional institution, Simpson was provided with a written notice of charges and hearing. The notice informed Simpson that he had charged with a parole violation due to the new criminal charges against him for retail theft, and with an unrelated pair of technical parole violations arising out of his alleged failure to maintain regular contact with parole agents on November 5 and 6, 2015. The notice informed Simpson that a preliminary and detention hearing before a hearing examiner had been scheduled for December 24, 2015.

On December 24, 2015—twelve days after Simpson's initial detention—Simpson appeared before a hearing examiner for his

---

*v. Simpson*, Docket No. CP-22-MD-0000089-2016 (Dauphin Cty. (Pa.) C.C.P.); *Commonwealth v. Simpson*, Docket No. CP-22-CR-0002098-2016 (Dauphin Cty. (Pa.) C.C.P.).

[3] *See generally Commonwealth v. Simpson*, Docket No. CP-15-CR-0004585-2008 (Chester Cty. (Pa.) C.C.P.).

[4] At that preliminary arraignment, bail was set at $10,000, and Simpson posted a $10,000 surety bond later that day.

preliminary and detention hearing, but no attorney was available to represent him because the county public defender's office was apparently closed that day. Simpson declined to waive his right to be represented by an attorney, and he subsequently refused to sign a written request for continuance form. The hearing examiner continued the preliminary and detention hearing until January 8, 2016, to permit Simpson to secure counsel and due to the unavailability of witnesses Simpson wished to call in his defense. In addition to the hearing officer, Simpson's parole agent, defendant Amy Burrell, signed the continuance request form as a witness, below a note that Simpson had refused to sign the form.

On January 8, 2016—twenty-seven days after Simpson's initial detention—Simpson again appeared before a hearing examiner for his preliminary and detention hearing. This time, an attorney from the county public defender's office, Joshua Yohe, Esq., was available and offered to represent Simpson. But Simpson desired to be represented by privately retained counsel.[5] As a result of this, as well as the

---

[5] Based on his submissions, on December 23, 2015, Simpson had written to Matthew L. Owens, Esq., an attorney who represented him in an ongoing motor vehicle accident case. Owens had not been retained to represent Simpson in any criminal or parole matters. On January 18,
*(continued on next page)*

unavailability of witnesses Simpson wished to call in his defense, the hearing was once again continued until January 25, 2016. This time, Simpson alleges that he was "threatened" and "forced" by the hearing examiner to sign the continuance request form.⁶ At the preliminary and detention hearing, which was ultimately held on January 29, 2016, the hearing examiner stated that he also advised Simpson on January 8, 2016, that no further continuances for Simpson to secure attorney representation would be permitted, as he had been provided ample time to do so, and because a public defender had already been offered to represent him.

On January 25, 2016, Simpson's hearing was again continued, this time on the parole board's motion due to a weather closing—neither the hearing examiner nor the charging parole agent was available to attend.⁷

---

2016, Owens wrote back to Simpson, forwarding a proposed retention agreement, which would have required Simpson to remit payment of a substantial initial fee together with the signed agreement to commence the attorney's representation in Simpson's parole case.

⁶ The nature of the alleged threat(s) and force are not clear from the pleadings or motion papers before us. In his complaint, however, Simpson concedes that "the parolee desired a continuance" to secure private representation—he appears simply to have been wary of signing the continuance request form without counsel to advise him.

⁷ We note that Simpson takes issue with this reason for continuing
*(continued on next page)*

The hearing was rescheduled for January 29, 2016.

On January 29, 2016—forty-eight days after Simpson's initial detention—the preliminary and detention hearing was held. An attorney from the county public defender's office, Diane Morgan, Esq., was available and offered to represent Simpson. But Simpson desired to be represented by privately retained counsel. Simpson had apparently been in contact with an attorney but had encountered difficulties in arranging payment to the lawyer. Simpson apparently advised the hearing examiner that he did not want the public defender to represent him and did not want to proceed without an attorney. Simpson reportedly became agitated and was removed from the hearing, which was then conducted *in absentia.* Simpson's parole agent, defendant Burrell, testified regarding her unsuccessful attempts to contact him on November 5 and 6, 2015, and regarding his recent arrest and criminal charges for felony retail theft. The hearing examiner accepted into evidence a copy of a state

---

the parole violation proceedings in his motion papers, arguing that historical weather reports indicate that weather conditions were fine on January 25, 2016. We take judicial notice, however, of the fact that the Harrisburg area was still recovering at the time from a record 30-inch snowfall from a blizzard that struck just two days earlier, likely making travel difficult.

court docket report with respect to Simpson's criminal proceedings, as well as copies of the notes left for Simpson by Burrell on November 5 and 6, 2015, and a parole office sign-in sheet documenting that Simpson did not report to the Harrisburg district office as directed on November 6, 2015. Ultimately, the hearing examiner found probable cause established with respect to the technical parole violation charges. Because Simpson was not present to waive his right to a panel hearing, the hearing examiner scheduled a panel hearing on detention.

On or about February 22, 2016—one day before expiration of the maximum sentence on the prior felony conviction underlying Simpson's parole supervision—the parole board rendered a decision on detention, ordering that he should be detained pending disposition of the state criminal charges, and ordering that a panel revocation hearing should be scheduled.[8] On February 23, 2016, Simpson was released from detention when his parole sentence maxed out.

On April 13, 2016, a preliminary hearing was held in Simpson's recent felony retail theft case, and the case was transferred to the Court

---

[8] The record before us does not contain any further documentation or other information concerning this detention determination or the revocation hearing.

of Common Pleas. On January 31, 2017, Simpson pleaded guilty and was sentenced to serve three to twenty-three months in prison, with credit for time served and immediate parole, to be followed by twelve months of probation.

The plaintiff seeks any audio recordings or transcripts of his parole revocation proceedings held on December 24, 2015, January 8, 2016, and January 25, 2016, and any audio recordings of the preliminary and detention hearing held on January 29, 2016. There is no dispute that Simpson's preliminary and detention hearing was scheduled to occur on each of these four dates. Nor is there any dispute that on each of the first three hearing dates, Simpson's preliminary and detention hearing was continued until a later date. There is no dispute that no attorney—privately retained or public defender—was available to represent Simpson at the December 24, 2015, hearing date. There is no dispute that a public defender was available to represent Simpson at the January 8, 2016, hearing date, and that he declined that offer because he preferred to retain private counsel but had not yet done so. There is no reasonable dispute that the January 25, 2016, hearing date was continued due to the unavailability of the hearing examiner and charging parole agent as a

result of inclement weather and travel conditions. There is no dispute that a public defender was available to represent Simpson at the January 29, 2016, hearing, and that he once again declined that offer because he preferred to retain private counsel but still had not yet done so. While Simpson appears to allege that no hearing was actually held on January 29, 2016, he has clearly acknowledged that he was brought before a hearing examiner that day, and documentary evidence submitted by Simpson himself in support of his motion indicates that the preliminary and detention hearing was held *in absentia*—that is, without him being present—after he became disruptive and was removed from the room.

In his unsworn declaration, Attorney Davis attested that he had thoroughly reviewed the parole board's electronic audio files for Simpson and only located a single electronic audio file for the January 29, 2016, hearing date, which he provided to defense counsel, along with a stenographic transcript of the hearing that day. Davis attested that there were no electronic audio files (or transcripts) for the first three dates, on which no hearing actually took place because proceedings were simply continued and rescheduled for a new hearing date.

With respect to the first three hearing dates, a party "cannot be

compelled to produce what she does not possess." *Dipietro v. Jefferson Bank*, 144 F.R.D. 279, 281 (E.D. Pa. 1992). Moreover, it is clear the content of any such audio recordings (or transcripts), if they did exist, would be of no relevance to Simpson's claim that his preliminary and detention hearing was unreasonably delayed, given the undisputed facts set forth above[9] and the lack of any allegation or evidence that Simpson suffered prejudice as a result of these delays. *See Hammie v. Castor*, No. CIV. A. 93-5304, 1995 WL 61126, at *3 (E.D. Pa. Feb. 10, 1995) ("[T]he remedies for failing to provide a timely preliminary hearing are limited.

---

[9] We note that the applicable state regulations, referenced repeatedly by Simpson, generally require that a preliminary hearing be held within 14 days after a parolee is detained, and that a detention hearing be held within 30 days after a parolee is detained. *See* 37 Pa. Code § 71.2(1)(ii) (preliminary hearing); *id.* § 71.3(9) (detention hearing). But these same regulations further provide for the exclusion of certain delays from this time period, including "[t]he unavailability of a parolee or counsel," *id.* § 71.5(c)(1), "[c]ontinuances granted at the request of a parolee or counsel," *id.* § 71.5(c)(2), "[r]easonable or necessary continuances granted to, or occurrences related to, the [parole board] or its employees," *id.* § 71.5(c)(3), and "[a]n event which could not be reasonably anticipated or controlled by the [parole board], including, but not limited to, . . . acts of nature," *id.* § 71.5(c)(5). All three continuances following the initial hearing date fall within one or more of these exceptions. Moreover, any audio recordings or transcripts of proceedings on these three dates would clearly lack any relevance whatsoever with respect to Simpson's claims that he was denied his due process rights to be represented by counsel or present evidence in his defense.

For example, a person seeking relief must show he was prejudiced by the delay in holding a preliminary hearing."); *id.* at *4 (absent showing of prejudice, 47-day delay in holding preliminary hearing on parole violation charges did not violate due process); *see also Benny v. U.S. Parole Comm'n,* 295 F.3d 977, 986 (9th Cir. 2002) (absent showing of prejudice, 31-day delay in conducting preliminary interview did not violate due process); *Vargas v. U.S. Parole Comm'n,* 865 F.2d 191, 194 (9th Cir. 1988) ("[A] preliminary hearing delay of 40 days without any evidence of prejudice is not unreasonable."). In particular, we note that, notwithstanding the delay, the hearing examiner found probable cause established with respect to Simpson's technical violations, and the parole board ultimately determined that he should be detained pending disposition of the new criminal charges against him pursuant to 37 Pa. Code § 71.3. There is no allegation, much less any evidence, that a more expeditious hearing would have led to a different, more favorable result. We further note that Simpson ultimately pleaded guilty to the underlying felony retail theft charges, and the time he spent in detention pursuant to a parole violator warrant appears to have been fully credited toward service of his minimum jail sentence in that case as well. Accordingly, we

will deny the motion to compel with respect to the December 24, 2015, January 8, 2016, and January 25, 2016, hearing dates.

With respect to the final hearing date—January 29, 2016—it is clear from the record before us that a preliminary and detention hearing was in fact held on that day, and a stenographic transcript of the hearing has been produced to the plaintiff pursuant to his document request. It does not appear from the record, however, that the defendants have produced the audio recording of this hearing, the existence and possession of which the Davis declaration clearly acknowledges. Accordingly, we will grant the motion to compel with respect to production of the electronic audio recording of the January 29, 2016, hearing.

An appropriate Order follows.


Dated: July 26, 2019                  *s/Joseph F. Saporito, Jr.*
                                      JOSEPH F. SAPORITO, JR.
                                      United States Magistrate Judge