# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

CHALMERS A. SIMPSON, JR.,

    Plaintiff,

    v.

PA. BOARD PROBATION /
PAROLE, et al.,

    Defendants.

CIVIL ACTION NO. 1:17-cv-02343

(SAPORITO, M.J.)

## MEMORANDUM

This matter comes before the court on the defendants' motion to dismiss for failure to obey court orders. (Doc. 65). For the reasons set forth herein, the motion will be granted, and the action will be dismissed with prejudice as a sanction for the plaintiff's refusal to appear for his own deposition and as a result of the plaintiff's failure to prosecute and his failure to comply with multiple court orders.

## I. BACKGROUND

The plaintiff, Chalmers A. Simpson, Jr., initiated this action by lodging his *pro se* complaint with the clerk for filing on December 19, 2017, together with an application for leave to proceed *in forma pauperis*. In his complaint, Simpson claimed that he was deprived of his

Fourteenth Amendment right to due process because the defendants failed to hold a preliminary hearing in his parole revocation proceedings within fourteen days after his arrest and incarceration, and because he was denied his due process right to be represented by counsel in these same proceedings. *See generally Simpson v. Pa. Bd. of Probation / Parole*, Civil Action No. 1:17-cv-02343, 2019 WL 3387664, at *2–*3 (M.D. Pa. July 26, 2019) (summarizing the factual underpinnings of the plaintiff's claims) (Doc. 55, at 3–9). On January 4, 2018, we granted leave to proceed *in forma pauperis* and the complaint was deemed filed. On March 20, 2018, the defendants appeared through counsel and filed their answer to the complaint.

On January 24, 2019, the defendants properly noticed a deposition of the plaintiff to take place on January 31, 2019. The plaintiff informed the defendants that he had a medical test scheduled for that date, and the defendants agreed to reschedule the deposition.

The defendants rescheduled the plaintiff's deposition to take place on April 16, 2019. A week before the rescheduled deposition date, the plaintiff wrote to inform the defendants that he was scheduled to appear in state court proceedings on that date. The defendants then made

multiple attempts to contact the plaintiff to reschedule the deposition once again, both by telephone and in writing, but he failed to respond. On May 16, 2019, having been unable to obtain any response whatsoever from the plaintiff, the defendants filed a motion to compel the plaintiff to appear for his deposition within thirty days. On May 20, 2019, we entered an order granting the motion and explicitly directing the plaintiff to "appear at the offices of Defendants' counsel for his deposition within 30 days." (Doc. 36.) The order further admonished the plaintiff that he may be sanctioned if he failed to comply with the order.

On June 17, 2019, the defendants moved for an extension of time to complete discovery and to file dispositive motions. In their motion, the defendants reported that the plaintiff had continued to delay his deposition, insisting that it be conducted outside normal business hours. On June 18, 2019, we entered an order granting the motion and explicitly directing the plaintiff to "appear for his deposition during normal business hours, 9:00 a.m. to 5:00 p.m., within thirty (30) days of the date of this Order." (Doc. 46.)

On June 19, 2019, the plaintiff filed a motion for an extension of case deadlines to permit additional time for him to complete depositions

of the defendants and non-party witnesses. The motion also requested the issuance of ten subpoenas in blank. On June 20, 2019, we granted the motion in part and denied it in part. We granted the request for an extension of the discovery and dispositive motions deadlines, but we denied the *pro se* plaintiff's request for the issuance of subpoenas in blank because he failed to demonstrate that he had made provisions for the costs associated with the requested subpoenas. (Doc. 48.) *See generally Badman v. Stark*, 139 F.R.D. 601, 605 (M.D. Pa. 1991).

On July 23, 2019, the court received a *pro se* request from the plaintiff for the issuance of eight subpoenas in blank. The request did not identify whom the plaintiff sought to depose, nor did it demonstrate how the indigent plaintiff intended to pay each witness any fees or costs incurred by them in complying with the requested subpoenas. *See generally Badman*, 139 F.R.D. at 605. On July 24, 2019, the defendants filed a Rule 26(c) motion for a protective order with respect to this request for the issuance of subpoenas in blank. On July 26, 2019, we entered an order denying the request for the issuance of subpoenas in blank and denying the motion for a protective order as moot. (Doc. 54.)

On July 30, 2019, apparently not yet having received our order of

July 26, 2019, the plaintiff filed a *pro se* motion styled as a "motion to deny protective order" expressing his opposition to the defendants' motion. On August 2, 2019, we entered an order denying the plaintiff's motion to deny protective order as moot, in light of our earlier denial of the underlying defendants' motion as moot. (Doc. 59.)

In that order of August 2, 2019, however, we further noted that attached to the plaintiff's motion opposing a protective order were 134 pages of documentary exhibits, including several subpoenas directed to each of the party-defendants and to certain non-party recipients. As prepared by the *pro se* plaintiff, each of the subpoenas was purportedly issued under the authority of the United States District Court for the Middle District of Pennsylvania in connection with this case. Each subpoena commanded the recipient to attend and testify at a deposition to be taken at the Harrisburg offices of defense counsel on July 31, 2019, at 10:00 a.m., or to produce requested documents to the plaintiff by July 26, 2019, at 4:00 p.m. Each subpoena was dated July 23, 2019. Each subpoena bore two signatures. One signature appears to be a stamped signature by Michael E. Kunz, Clerk of the United States District Court for the *Eastern* District of Pennsylvania. The second signature is that of

the *pro se* plaintiff himself, in a space labeled "Attorney's signature," which was provided on the form so an *attorney* admitted to the bar of this court may sign and issue a subpoena in his or her role as an officer of the court, in lieu of the clerk's signature. The plaintiff is not an attorney. Each subpoena included a proof of service section, in which the plaintiff indicated that he, personally, served the subpoena on the named recipient, and that *no* witness fee was tendered. (*Id.*)

We noted in our order that the plaintiff had twice before requested the issuance of subpoenas in blank from the clerk, and that we had twice ordered the clerk to refuse to issue subpoenas in blank because the indigent *pro se* plaintiff had failed to demonstrate that he had made provision for payment of the costs associated with the requested subpoenas. Both times, we had instructed the plaintiff that any future request "should explicitly demonstrate that he has made provisions for payment of the costs that will be incurred by non-party subpoena recipients." (*Id.*) *See generally Badman*, 139 F.R.D. at 605.

But rather than comply with these instructions, we noted that the plaintiff had obtained subpoenas in blank from a *different court*— perhaps issued legitimately in connection with some other case, perhaps

not. We noted that the plaintiff completed the subpoena forms and then improperly served them on the recipients himself, without tendering the requisite witness and mileage fees.

In our order, we found that the several subpoenas attached as exhibits to the plaintiff's motion opposing a protective order were improper and unauthorized. We found that they were not signed by the clerk or an officer of *this* court, and we noted that they arguably were fraudulently procured and signed. We further found that the subpoenas were improperly served by the plaintiff personally, without tender of the requisite witness and mileage fees. Most saliently, however, we found that the subpoenas had been served in direct contravention of our prior orders denying the plaintiff's requests for the issuance of subpoenas in blank and directing the clerk to refuse to issue subpoenas in blank to this plaintiff. (*Id.*)

Thus, in addition to denying the plaintiff's "motion" as moot, we ordered that the several unauthorized subpoenas served by the *pro se* plaintiff be quashed, and we ordered the plaintiff to respond to the order in writing within fourteen days to show cause why he should not be sanctioned for this apparent fraudulent use of civil process. (*Id.*) The

plaintiff did not file a response to this order to show cause within the time allotted, nor thereafter.

In the meantime, on July 30, 2019, the plaintiff filed a *pro se* motion for a continuance of his own deposition, which had been properly noticed by the defendants to take place the next day, July 31, 2019.[1] The plaintiff's motion was delivered to the clerk for filing on July 30, 2019, but it was not docketed until the day of the scheduled deposition, July 31, 2019, and it only came to our attention the following day, August 1, 2019. On August 2, 2019, we entered an order denying the plaintiff's motion and directing that: "If necessary, the defendants may, at their discretion, reschedule and re-notice the deposition of the plaintiff to be taken at a reasonable time, date, and place within the next fourteen (14) days." (Doc. 60.)

The defendants properly noticed the rescheduled deposition of the plaintiff to take place on August 15, 2019. On August 14, 2019—once again, on the literal eve of his deposition—the plaintiff filed a *pro se*

---

[1] The basis for the plaintiff's request was a purported need to review materials only recently produced by the defendants before he sat for his own deposition. But, as we noted in our order, the defendants' production of documents and an audio recording was simply not relevant to the plaintiff's own deposition testimony. (*See* Doc. 60.)

motion for a continuance of his deposition until a later date.[2] That same day—August 14, 2019—we entered an order denying the plaintiff's motion for a continuance and explicitly directing that: "The plaintiff shall attend and testify at his deposition at the date, time, and place noticed by the defendants." (Doc. 64.)

That same day—August 14, 2019—counsel for the defendants called the plaintiff and left multiple voicemail messages advising him that the motion for a continuance had been denied and the deposition would proceed as scheduled on August 15, 2019. Notwithstanding our order and opposing counsel's communication, Simpson failed to appear for his deposition on August 15, 2019. (*See* Doc. 72.)

On August 26, 2019, the defendants filed the instant motion to dismiss this action pursuant to Rule 37(d) and Rule 41(b) of the Federal

---

[2] The basis of this request by the plaintiff was the defendants' purported failure to produce certain documents and audio recordings, some of which were previously addressed by the court in an opinion and order denying a motion to compel by the plaintiff. *See Simpson*, 2019 WL 3387664, at *3–*4 (denying motion to compel with respect to the production of audio recordings that did not—and never did—exist, and which would have been irrelevant to the plaintiff's claims even if they did) (Doc. 55, at 9–13). The remainder of the undisclosed information and materials described in the plaintiff's motion for a continuance were entirely irrelevant to the plaintiff's own deposition testimony.

Rules of Civil Procedure. On September 9, 2019, the defendants filed their brief in support of the motion.[3] On September 13, 2019, the defendants filed a supplement to their motion—a stenographic transcript of a statement on the record by defense counsel on August 15, 2019, in which counsel described the circumstances of the plaintiff's failure to appear for his own deposition on that date.

On September 20, 2019, the plaintiff timely filed a *pro se* motion for a 90-day extension of time to file a brief in opposition to the defendants' motion to dismiss. This motion for an extension did not address the earlier order to show cause. On September 23, 2019, we entered an order granting the motion for an extension of time and directing the plaintiff to file his brief in opposition to the motion to dismiss on or before December 30, 2019. The order further directed that the plaintiff's brief include a response to the August 2, 2019, order to show cause. (Doc. 74.)

On December 30, 2019, the plaintiff timely filed a *pro se* motion for an additional six-month extension of time to file a brief in opposition to

---

[3] The defendant's brief explicitly discussed the potential dismissal of this action under Rules 37 and 41 and application of the various factors set forth by the Third Circuit in *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863 (3d Cir. 1984).

the motion to dismiss and to respond to the order to show cause. On January 2, 2020, we entered an order granting the motion for an extension of time in part and denying it in part. The order granted the plaintiff a 45-day extension of time and directed him to file his brief in opposition to the motion to dismiss and response to the order to show cause on or before February 13, 2020. The order explicitly admonished the plaintiff that: "Absent extraordinary circumstances, there shall be no further extensions of time with respect to this matter." (Doc. 76.) At the time of this order, the motion to dismiss had been pending for more than four months, and the order to show cause had been pending for exactly five months.

On February 13, 2020—the day when his brief in opposition and show cause response was due—the plaintiff filed a notice of interlocutory appeal from various orders, including our August 2, 2019, order to show cause and our August 14, 2019, order denying a continuance of the plaintiff's deposition. On June 17, 2021, the Third Circuit dismissed the plaintiff's appeal for lack of jurisdiction.

On December 7, 2021, we made final attempt to elicit a substantive response from the *pro se* plaintiff, entering an order directing him to file

a brief in opposition to the motion to dismiss and response to the order to show cause on or before December 28, 2021. In doing so, we admonished the plaintiff that: "In light of the multiple substantial extensions of time previously granted with respect to this motion, and the substantial period during which the action was stayed pending an interlocutory appeal, absent extraordinary circumstances, there shall be no further extensions of time with respect to this matter . . . ." (Doc. 81.)

As of this date, Simpson has failed to file a brief in opposition to the defendants' motion to dismiss or this court's order to show cause, or to otherwise respond to the defendants' motion or the court's various orders.[4]

## II.   LEGAL STANDARD

Under the federal rules, if a party fails to attend his own deposition after being served with proper notice, the court may impose any sanction listed in Rule 37(b)(2)(A)(i)–(vii). Fed. R. Civ. P. 37(d)(3). Under this rule, when imposing a sanction, the court may issue "further just orders," including:

---

[4] On February 1, 2022, the plaintiff did file a 41-page set of exhibits, most of which—if not all—had been filed previously. (Doc. 82.) None of the exhibits were responsive to the defendants' motion or our orders.

(i.) directing that . . . designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii.) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii.) striking pleadings in whole or in part;

(iv.) staying further proceedings until the order is obeyed;

(v.) dismissing the action or proceeding in whole or in part; [or]

(vi.) rendering a default judgment against the disobedient party[.]

Fed. R. Civ. P. 37(b)(2)(A)(i)–(vi). Moreover,

> [i]nstead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(d)(3).

> Rule 37 sanctions are contemplated when there has been virtually total noncompliance with discovery. Yet, a direct order by the Court, as Rule 37(a) and (b) requires, is not a necessary predicate to imposing penalties under Rule 37(d). When it has been determined that a party has willfully failed to comply with the rules of discovery, it is within the discretion of the trial court to dismiss the action. Litigants may

> oppose discovery requests by seeking a protective order
> from the court; they cannot be permitted to frustrate
> discovery by refusing to comply with a proper request.
> The dismissal sanction, although severe, is a necessary
> tool, both to punish in the individual action and to deter
> future abuses in the discovery process.

*Al Barnett & Son, Inc. v. Outboard Marine Corp.*, 611 F.2d 32, 35–36 (3d Cir. 1979) (citations omitted).

Rule 41(b) further permits a district court to dismiss a plaintiff's case for failure to prosecute or to comply with court orders. *See* Fed. R. Civ. P. 41(b) ("If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."). "Such dismissal is deemed to be an adjudication on the merits, barring any further action between the parties." *Sebrell ex rel. Sebrell v. Philadelphia Police Dep't*, 159 Fed. App'x 371, 373 (3d Cir. 2005).

## III.   DISCUSSION

Simpson has repeatedly failed to meet his obligations under the federal rules and specific orders by this court directing him to appear for a deposition, to respond to the defendants' motion to dismiss, and to respond to the court's order to show cause. The defendants have moved for dismissal of this action under Rules 37(d) and 41(b) of the Federal

Rules of Civil Procedure.

When considering dismissal under Rule 37(d) or Rule 41(b), a court must balance the following six factors:

> (1) the extent of the *party*'s personal *responsibility*; (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith*; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions*; and (6) the *meritoriousness* of the claim or defense.

*Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984) (emphasis in original).[5]

In exercising this discretion, there is no "magic formula" or "mechanical calculation" to determine whether the case should be dismissed. *See Briscoe v. Klaus*, 538 F.3d 252, 263 (3d Cir. 2008); *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992). "While 'no single *Poulis*

---

[5] We note that the plaintiff has failed to oppose the defendants' motion to dismiss whatsoever. Our local rules provide that a motion will be deemed unopposed if the non-movant fails to file a brief in opposition. *See* L.R. 7.6. Moreover, the plaintiff failed to comply with subsequent orders by this court explicitly directing him to respond to the motion. But notwithstanding Simpson's failure to expressly oppose the motion and the effect of that failure under the local rules, we are required to consider the several *Poulis* factors before imposing the sanction of dismissal. *See Hernandez v. Palakovich*, 293 Fed. App'x 890, 895–96 (3d Cir. 2008).

factor is dispositive,' we have also made it clear that 'not all of the *Poulis* factors need be satisfied in order to dismiss a complaint.'" *Briscoe*, 538 F.3d at 263 (quoting *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003), and *Mindek*, 964 F.2d at 1373).

The first *Poulis* factor weighs in favor of dismissal. It is indisputable that that the total failure to abide by legal responsibilities has been the fault of the *pro se* plaintiff himself, and not the fault of counsel (he has none) or elements outside of his control. Simpson has consistently and actively refused to cooperate with opposing counsel in discovery or comply with the express orders of this court directing him to submit himself to a discovery deposition. His requests for the issuance of subpoenas in blank were twice rejected by this court, with express instructions from the court on the prerequisite showing necessary to obtain the issuance of such subpoenas, but the plaintiff nevertheless persisted and fraudulently procured unauthorized subpoenas in blank bearing the signature of the clerk of *another* district court, which he then personally served on multiple party and non-party witnesses. Given these facts, it is clear that the culpability in this circumstance rests entirely with the plaintiff.

The second *Poulis* factor weighs in favor of dismissal. "Generally, prejudice includes 'the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party.'" *Briscoe*, 538 F.3d at 259. But "prejudice is not limited to 'irremediable' or 'irreparable' harm. It also includes 'the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy.'" *Id.* (citations omitted). In failing to attend his deposition, Simpson has actively prejudiced the defendants from being able to defend themselves against Simpson's civil rights claims. This alone has justified dismissal under Rule 37(d) and tends to favor dismissal under the second *Poulis* factor. *See, e.g.*, *Barnett & Son*, 611 F.2d at 35–36.

The third *Poulis* factor weighs in favor of dismissal. "[C]onduct that occurs one or two times is insufficient to demonstrate a 'history of dilatoriness.'" *Briscoe*, 538 F.3d at 261. But "[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders." *Id.* at 260. Here, the plaintiff persisted in repeated attempts to obtain subpoenas in blank, despite the express rejection of

these requests by the court, leading him ultimately to turn to deceptive means to procure the desired subpoenas in blank from another court. Moreover, the defendants properly noticed Simpson's deposition on multiple occasions. Simpson repeatedly sought to delay his deposition, seeking continuances on various spurious grounds. The court repeatedly admonished the plaintiff that there was no basis for avoiding his deposition, expressly ordering him to submit to being deposed on no fewer than four occasions. Ultimately, on August 15, 2019, his most recent eleventh-hour request for a continuance having been denied prior to the scheduled deposition, Simpson failed to appear for a properly noticed deposition by the defendant. The defendant subsequently moved for dismissal of this action and Simpson has failed to file a brief in opposition. On no fewer than three occasions, we have entered orders expressly directing Simpson to file a brief in opposition to the defendant's motion and in response to our order to show cause, and Simpson has failed to do so. The entire history of this action has been characterized by a pattern of consistent delay and non-compliance by the plaintiff, militating in favor of dismissal. *See Poulis*, 747 F.2d at 868; *see also Emerson v. Thiel Coll.*, 296 F.3d 184, 191 (3d Cir. 2002) (finding a history

of dilatory conduct where plaintiff repeatedly requested stays and failed to comply with court mandated deadlines).

The fourth *Poulis* factor weighs in favor of dismissal.

> Under this factor, the District Court must consider whether the conduct was "the type of willful or contumacious behavior which was characterized as flagrant bad faith." Generally, "willfulness involves intentional or self-serving behavior." If the conduct is merely negligent or inadvertent, we will not call the conduct "contumacious."

*Briscoe*, 538 F.3d at 262 (quoting *Adams v. Trs. of N.J. Brewery Emps.' Pension Tr. Fund*, 29 F.3d 863, 875 (3d Cir. 1994)) (citations and brackets omitted). Here, Simpson has failed to appear for a properly noticed deposition on multiple occasions, and he has failed to comply with multiple orders expressly directing him to submit to being deposed. He has failed to comply with multiple orders directing him to respond to the defendants' motion to dismiss, and he has failed to comply with multiple orders directing him to show cause why he should not be sanctioned for his apparent fraudulent procurement and service of subpoenas in blank from another court, after this court's repeated rejection of his requests for the issuance of such subpoenas. The plaintiff having been provided with a full and fair opportunity to present reasons why he did not appear

to be deposed, why he should not be sanctioned for other discovery misconduct, and why this action should not be dismissed, the plaintiff having failed utterly to provide any such reason, and based on the record before us, we find that Simpson willfully refused to appear and be deposed as required under the federal rules and willfully refused to comply with this court's orders. *See Briscoe*, 538 F.3d at 262.

The fifth *Poulis* factor weighs in favor of dismissal.

> A District Court must consider the availability of sanctions alternative to dismissal. Where an attorney has caused the delay and noncompliance in the proceedings, [the Third Circuit] ha[s] noted that "under the Federal Rules of Civil Procedure and the 1983 amendments, the district court is specifically authorized to impose on an attorney those expenses, including attorneys' fees, caused by an unjustified failure to comply with discovery orders or pretrial orders." However, where a plaintiff is proceeding pro se, and moreover, is proceeding in forma pauperis, [the Third Circuit] ha[s] upheld the District Court's conclusion that no alternative sanctions existed because monetary sanctions, including attorney's fees, "would not be an effective alternative."

*Id.* at 262–63 (quoting *Poulis*, 747 F.2d at 869, and *Emerson v. Thiel Coll.*, 296 F.3d 184, 191 (3d Cir. 2002)) (citations and brackets omitted). Here, Simpson is proceeding both *pro se* and *in forma pauperis*. Because he is *pro se*, he has no attorney upon whom this court could impose expenses

- 20 -

for failing to comply with the court's orders and with his discovery obligations under the federal rules. Because he is *in forma pauperis*, we conclude that monetary sanctions, including an attorney's fees award, would not be an effective alternative sanction, particularly in light of his past history in this case of noncompliance with court orders and obligations imposed by the federal and local rules. *See Briscoe*, 538 F.3d at 263; *Emerson*, 296 F.3d at 191.

The sixth and final *Poulis* factor weighs in favor of dismissal. The plaintiff's § 1983 claims concerning the conduct of his parole revocation proceedings are likely barred by the favorable termination rule articulated by the Supreme Court of the United States in *Heck v. Humphrey*, 512 U.S. 477 (1994). *See Williams. Consovoy*, 453 F.3d 173, 176 (3d Cir. 2006). But even if we consider the substance of the plaintiff's factual allegations, his legal claims are clearly meritless. Although the applicable state regulations do generally require a preliminary hearing to be held within 14 days after a parolee is detained and a detention hearing within 30 days, these same regulations further provide for the exclusions of certain delays from these time periods, and each of the three continuances in Simpson's parole revocation proceedings fell within one

or more of these exceptions. *See Simpson*, 2019 WL 3387664 at *4 n.9 (Doc. 55, at 11 n.9). Notwithstanding these state regulations, to establish a due process claim, a parolee must demonstrate that he suffered actual prejudice as a result of the delay, but Simpson has failed to allege facts or point to any evidence that he suffered any prejudice at all as a result of the delay. *See id.* at *4 (Doc. 55, at 11–13). Moreover, based on the undisputed facts of this case, it is clear that Simpson's claim that he was denied his due process right to counsel at his revocation hearing is baseless—a public defender was available to represent Simpson, but he refused, preferring to retain private defense counsel and failing to do so despite repeated continuances. *See generally Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973) (recognizing that whether due process requires counsel in a parole revocation hearing must be determined on a case-by-case basis); *cf. United States v. Manuel*, 732 F.3d 283, 291 (3d Cir. 2013) (recognizing that there is no Sixth Amendment right to counsel at a parole revocation hearing). Finally, "[t]he plaintiff cannot refuse to cooperate with this discovery, which would address the merits of his claims, and then assert the untested merits of these claims as grounds for denying a motion to sanction him for this refusal to participate in

discovery." *Nowland v. Lucas*, Civil No. 1:10-CV-1863, 2012 WL 10559, at *6 (M.D. Pa. Jan. 3, 2012).

Ultimately, the balance of *Poulis* factors, considered together, clearly weigh heavily against the plaintiff and in favor of dismissal.

## IV.  CONCLUSION

For the foregoing reasons, the defendants' motion will be granted, and this civil action will be dismissed with prejudice as a sanction for the plaintiff's refusal to appear for his own deposition, pursuant to Rule 37(d) of the Federal Rules of Civil Procedure, and as a result of the plaintiff's failure to prosecute and his failure to comply with multiple court orders, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. In light of the plaintiff's indigent status, the parties shall bear their own costs.

An appropriate order follows.

Dated: March 17, 2022                 ***s/Joseph F. Saporito, Jr.***
                                      JOSEPH F. SAPORITO, JR.
                                      United States Magistrate Judge